IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

DOCUMENT MANAGEMENT SYSTEMS
LLC,

     Plaintiff,

     v.

ELSEVIER B.V.;

GOOGLE INC.;                                    C.A.  No:_____1:11-cv-332-SS_____

IAC/INTERACTIVECORP;

LEXISNEXIS;

LYCOS INC.;

WEBMD, LLC;                                    JURY TRIAL DEMANDED

YAHOO! INC.;

     Defendants.


**PLAINTIFF'S POST MARKMAN OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I.      APPLICABLE LAW ...............................................................................................3

    A.      *In Re Katz* ..................................................................................................3

    B.      Means-Plus-Function Elements With Computer Structure ...............3

II.     CONSTRUCTION OF DISPUTED CLAIM TERMS ......................................4

    A.      "means for storing"...................................................................................4

        1.      Application of *In re Katz* to 'storing' ..................................4

        2.      Algorithmic Structure for 'storing'.......................................5

    B.      "means for searching" ...........................................................................8

    C.      "means for categorizing"........................................................................9

        1.      Application of *In re Katz* to "categorizing" ........................9

        2.      Algorithmic Structure for 'categorizing'..............................9

    D.      "means for generating"..........................................................................12

        1.      Application of *In re Katz* to "means for generating" .........12

        2.      Algorithmic Structure for "means for generating" .............12

    E.      "source record" ......................................................................................15

    F.      "document"..............................................................................................16

    G.      "document type" .....................................................................................16

    H.      "category of document types".............................................................17

    I.      "generating an electronically executable query" .............................18

    J.      "a portion," "a substantial portion," "substantially all" .................19

    K.      "summary of the number of documents responsive to the query"......................................................................................................20

    L.      "presenting" does not require an output device.................................20

## TABLE OF AUTHORITIES

*Rhine v. Casio, Inc.*,

    183 F.3d 1342 (Fed. Cir. 1999)......................................................................................3

*In re Katz Interactive Call Processing Litigation*,

    639 F.3d 1303 (Fed. Cir. 2011)....................................................................................3

*Biomedino, LLC v. Waters Technologies Corporation*,

    490 F.3d 946, 950 (Fed. Cir. 2007).............................................................................3

*Typhoon Touch Technologies Inc. v. Dell Inc.*,

    659 F.3d 1376 (Fed. Cir. 2011)....................................................................................4

*Ergo Licensing v. Carefusion,*

    673 F.3d 1361 (Fed. Cir. 2012)...............................................................................9, 12

To the Honorable Court:

Plaintiff Document Management Systems LLC ("DMS") hereby files its Post Markman Opening Claim Construction Brief in support of its proposed construction of disputed claim terms in the patent at issue in this case, U.S. Patent No. 6,534,051 ("the '051 patent"). This Brief addresses issues related to claim construction as discussed in Defendants' Opposition Claim Construction Brief filed May 25, 2012, Docket No. 103, as well as the *Markman* hearing held in Austin on June 11, 2012.

## I.      APPLICABLE LAW

Claims should be construed, if possible, so as to sustain their validity. *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999).

### A.       *In Re Katz*

Functions in means-plus-function claims that can be achieved by any general purpose computer without special programming do not require any more structure than the general purpose processor that performs those functions. *In re Katz Interactive Call Processing Litigation*, 639 F.3d 1303, 1316 (Fed. Cir. 2011). Also in *Katz* at 1316, the Court explained that such claims do not run afoul of the rule against purely functional claiming, because such functions are coextensive with the structure disclosed, that is, a general purpose processor.

### B.      Means-Plus-Function Elements With Computer Structure

When algorithmic structure is required in support of a means-plus-function element, that requirement is not a high bar. All one needs to do is to recite some algorithmic structure corresponding to the function recited in a claim as means-plus-function. The written description is to clearly link or associate structure to the claimed function. *Biomedino, LLC v. Waters Technologies Corporation*, 490 F.3d 946, 950 (Fed. Cir. 2007). A patentee may express an

3

algorithm "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Typhoon Touch Technologies Inc. v. Dell Inc.*, 659 F.3d 1376, 1385 (Fed. Cir.  2011).

## II.    CONSTRUCTION OF DISPUTED CLAIM TERMS

### A.    "means for storing"

The phrase "means for storing a large domain of data" is disputed as it is found in claims 1, 10, 14, and 22.  DMS contends that the means-plus-function element of "means for storing" is eligible for the rule of *In re Katz* that a function of a means-plus-function element that is implemented without special programming on a general purpose computer has sufficient algorithmic support with no need for additional support in the specification.  Against the possibility that the Court might disagree with DMS's contention regarding the application of *In re Katz*, DMS also demonstrates algorithmic support in the specification for "means for storing."

#### 1.    Application of *In re Katz* to 'storing'

The means-plus-function claim element of "means for storing a large domain of data contained in multiple source records, at least some of the source records being comprised of individual documents of multiple document types" in the '051 patent requires no supportive algorithmic structure beyond a general purpose computer to meet the requirements of 35 U.S.C. § 112 ¶ 6.  Functions in means-plus-function claims that can be achieved by any general purpose computer without special programming do not require any more structure than the general purpose processor that performs those functions.  *In re Katz Interactive Call Processing Litigation*, 639 F.3d 1303, 1316 (Fed. Cir. 2011).  The function of "storing" was among the functions specifically considered by the court in *Katz*.  *Id*. at 1316.  With respect to "storing" as recited in the claims of the '051 patent, a general-purpose computer with no special

programming can perform the function of storing a large domain of data.  *See* Tipton Cole's

Markman testimony at page 34, lines 1-4, in the Markman transcript.  Similarly, a general-

purpose computer with no special programming can perform the function of storing documents,

including documents of multiple types.  It is undisputed that source records contain documents,

and therefore a general-purpose computer with no special programming can perform the function

of storing source records.  The claim element "means for storing a large domain of data

contained in multiple source records, at least some of the source records being comprised of

individual documents of multiple document types" is therefore entirely coextensive with the

structure of a general purpose computer and is entitled to an application of the rule of *In re Katz*.

No further structure, algorithmic or otherwise, is required under 35 U.S.C. § 112 ¶ 6 in support

of the claim element of 'means for storing.'

### 2.    Algorithmic Structure for 'storing'

Against the possibility that DMS fails to persuade on the issue of Katz, DMS argues in

the alternative that the specification of the '051 patent sets forth sufficient algorithmic structure

for the means-plus-function element "means for storing."  DMS has been accused of throwing a

lot of algorithmic structure on the wall in the hope that some of it would stick, accused of

throwing in the kitchen sink.  DMS admits that, in an abundance of caution, DMS cited a lot of

algorithm, including structure from 4:37-47, 5:24-27, 8:4-41, 9:13-16, and 10:1-16.  All of the

cited algorithmic structure for 'storing,' however, can be boiled down to the following four-step

algorithm, described in prose in the specification at column 10, lines 1-16:

- obtaining documents in electronic form, including converting from hard copy as needed;

- identifying and coding documents by document type;

- loading documents in electronic form into an appropriate search engine;

and

- identifying redundant documents by matching information associated with a document such as key words in the title, authors, and date of publication.

This 'boiling down' to a four-step algorithm is a correct approach to claim construction at this point in the case. According to 35 U.S.C. § 112, ¶ 6, a means-plus-function claim is to be construed to "cover all of the corresponding structure, material, or acts described in the specification." Such a boiling down to include all pertinent structure while omitting redundancies complies with 35 U.S.C. § 112, ¶ 6, by construing the claim to cover all of the corresponding structure, material, or acts described in the specification. Much of the algorithmic material in the '051 patent, is sufficiently redundant to be unnecessary in final claim construction – because in the boiled down construction of the four-step algorithm it is already included. For example, the description of storing in search engines at 4:37-47 is redundant to the step of "loading … into an appropriate search engine" in the four-step algorithm from 10:1-16. The description of search engines 'housing' documents at 5:24-27 is redundant to the step of "loading … into an appropriate search engine" in the four-step algorithm from 10:1-16. The description of identifying documents with document types at 9:13-16 is redundant to the step of "identifying and coding documents by document type" in the four-step algorithm. The description of the inverted file structure from 8:4-41 is sufficiently incorporated into claim construction by the limitation of "loading documents in electronic form …" as recited in the four-step algorithm. And the four-step algorithm described above recites the same level of detail as was in the algorithm approved by the court in *Typhoon Touch*:

- entry of a response

- then a search for the entered response in a library of responses

- then determination whether a match exists in the library, and

6

- then execution of an action if a match exists

*Typhoon Touch* at 1385.

The claimed function of 'storing' is properly linked or associated with the algorithmic structure described at 10:1-16.  The phrases "is loaded," "during loading," "at the time of loading," and "may be stored" in the description of 10:1-16 sufficiently link or associate the algorithmic structure from 10:1-16, 'boiled down' into the four-step algorithm described above, to the function of 'storing.'  One of skill in the art would understand from the phrases "is loaded," "during loading," "at the time of loading," and "may be stored" that the description at 10:1-16 describes the function of 'storing,' as evidenced by Tipton Cole's description of the algorithmic content of 10:1-16 beginning on page 64 of the Markman Transcript.  The four-step algorithm from 10:1-16 is therefore sufficiently linked to or associated with the claimed function of 'storing' for purposes of claim construction.

The parties agree on the definition of the function of 'storing,' as set forth in the Joint Claim Construction Statement.  For that reason and for the additional reasons set forth above, therefore, DMS submits that the correct construction of "means for storing" is:

**Construction subject to the rule of *In re Katz*:**

> **Function (claims 1, 14, 22)**: storing a large domain of data contained in multiple source records, at least some of the source records being comprised of individual documents of multiple document types

> **Structure (claims 1, 14, and 22)**:  A general purpose computer configured without special programming to carry out the function of storing a large domain of data contained in multiple source records, at least some of the source records being comprised of individual documents of multiple document types

> **Function (claim 10)**: storing a large domain of data contained in multiple document types

**Structure (claims 10)**: A general purpose computer configured without special programming to carry out the function of storing a large domain of data contained in multiple document types

**Construction without the rule of *In re Katz*:**

**Function (claims 1, 14, 22)**: storing a large domain of data contained in multiple source records, at least some of the source records being comprised of individual documents of multiple document types

**Function (claim 10)**: storing a large domain of data contained in multiple document types

**Structure (claims 1, 10, 14, and 22)**:
- obtaining documents in electronic form, including converting from hard copy as needed;

- identifying and coding documents by document type;

- loading documents in electronic form into an appropriate search engine; and

- identifying redundant documents by matching information associated with a document such as key words in the title, authors, and date of publication.

**B.    "means for searching"**

The parties have conferred and reached agreement on the construction of means for

searching.  The agreed construction is:

**Function**: searching at least a [substantial] portion of such data based on a search query to identify documents of multiple types responsive to the query

**Structure**:
- A general purpose computer searching at least a [substantial] portion of the entire domain using Boolean search engine techniques;

- A general purpose computer searching at least a [substantial] portion of the entire domain using vector search engine

8

techniques; and

- A general purpose computer searching at least a [substantial] portion of the entire domain using probabilistic search engine techniques.

This expression of the construction of "means for searching" brackets for brevity the term "substantial," because Claims 12, 14, and 22 recite 'substantial,' while claim 10 does not.

### C.    "means for categorizing"

The phrase "means for categorizing documents responsive to the query based on document type" is disputed as it is found in claims 1, 10, 14, and 22.

#### 1.    Application of *In re Katz* to "categorizing'

Upon reflection and further study of *Ergo Licensing v. Carefusion,* 673 F.3d 1361 (Fed. Cir. 2012), as argued for the Defendants by Mr. Zembek during the *Markman* hearing, DMS concludes that categorizing according to the claims of the '051 patent appears to require too much programming to qualify as a general purpose computer function.  DMS therefore withdraws its assertion that the rule of *In re Katz* applies to "means for categorizing."

#### 2.    Algorithmic Structure for 'categorizing'

The specification of the '051 patent does, however, set forth sufficient algorithmic structure to enable construction of "means for categorizing."  Again DMS previously cited a quantity of algorithmic structure, including structure described in the specification at 4:45-60, 5:13-24, 8:58-9:12, 9:13-67, and 10:1-30.  DMS proposes to boil all that algorithm down to the following three-step algorithm, as described at 4:55-60 in the specification of the '051 patent:

- receiving a document responsive to a search query;

- identifying the document by document type;

- assigning the document to at least one category according to the document type

This 'boiling down' to a three-step algorithm is a correct approach to claim construction at this point in the case.  According to 35 U.S.C. § 112, ¶ 6, a means-plus-function claim is to be construed to "cover all of the corresponding structure, material, or acts described in the specification."  Such a boiling down to include all pertinent structure while omitting redundancies complies with 35 U.S.C. § 112, ¶ 6, by construing the claim to cover all of the corresponding structure, material, or acts described in the specification.  Much of the algorithmic material in the '051 patent, is sufficiently redundant to be unnecessary in final claim construction – because in the boiled down construction of the three-step algorithm it is already included.  All elements of the three-step algorithm were included within the algorithmic structure recited by DMS in the Joint Statement.  Our effort here is to boil it down, that is, to state the algorithmic structure more concisely, to obtain a definite construction under 35 U.S.C. § 112, ¶ 2, and effect a construction that can be used in jury instructions.

This boiled down three-step algorithm is an exact depiction of the algorithmic structure in the specification.  That categorizing is carried out with these steps is shown at least at this area of the specification:  "As these results are **received** each document returned is **identified** by document type and **assigned** to a particular category …"  4:57-59 (emphasis added).  The "results" that are "received" are documents responsive to a search query.  4:55-60.  Thus 4:55-60 concisely states the entire three-step algorithm.

The lengthy additional algorithmic structure cited by DMS in the Joint Statement and at the *Markman* hearing is sufficiently redundant to justify boiling it down.  The descriptions of broadcasting a query, waiting for acknowledgments, asking a user whether to accept a partial search, and so on, from 4:45-60 are all encompassed within the algorithm step of receiving a document responsive to a search query, which is taken directly from the material in 4:45-60 at

4:57-59.  The material at 5:13-24, particularly the phrase at 5:13-15, "When all results are reported (i.e. all columns have indicated they are finished), the SAS 24 organizes the documents into the above-described categories…," although supportive of the steps of receiving a document and assigning the document to a category, is also redundant to those steps as recited in the three-step algorithm.  The specification at 8:59-9:12 sets forth a detailed description of categorizing, sorting first into document types, then into categories, sets of categories, and so on, all of which is encompassed within the second step of the three-step algorithm, assigning the document to at least one category according to document type.  The structure at 9:13-67, much of which is a listing of many different kinds of categories, is all encompassed within the second algorithm step of assigning a document to at least one category according to document type.  The other material in 10:1-30, relationships among document types and categories and various examples of sorting documents into categories, is encompassed within the algorithm step of assigning the document to at least one category according to document type.

The claimed function "categorizing documents **responsive to the query** based on document type" is properly linked or associated with the algorithmic structure described at 4:57-59.  The claim itself provides how to consider that linkage by stating that the function of categorizing is responsive to the query.  The phrase at 4:57-59 states: "**As these results are received** each document returned is identified by document type and assigned to a particular category …"  4:57-59 (emphasis added).  The "results" that are "received" are documents responsive to a search query.  4:55-60.  One skilled in the art would understand the algorithmic structure properly linked or associated with the function of categorizing to be the algorithmic steps described responsive to the query, that is, as these results are received.  That one of skill in the art would understand the proper link or association of the three-step algorithm described

11

above with the claimed function of categorizing is evidenced by Tipton Cole's testimony at page 42, line 24 to 43, line 5 of the Markman transcript.  The three-step algorithm from 4:57-59 is therefore sufficiently linked to or associated with the claimed function of 'categorizing" for purposes of claim construction.

The parties agree on the definition of the function of 'categorizing,' as set forth in the Joint Claim Construction Statement.  For that reason and for the additional reasons set forth above, DMS submits that the correct construction of "means for categorizing" is:

**Function (claim 1, 10, 14, 22)**: categorizing documents responsive to the query based on document type

**Structure (claims 1, 10, 14, and 22)**:
- receiving a document responsive to a search query;

- identifying the document by document type;

- assigning the document to at least one category according to the document type

### D.  "means for generating"

#### 1.  Application of *In re Katz* to "means for generating"

Upon reflection and further study of *Ergo Licensing v. Carefusion,* 673 F.3d 1361 (Fed. Cir. 2012), as argued for the Defendants by Mr. Zembek during the *Markman* hearing, DMS concludes that generating a summary of the number of responsive documents according to the claims of the '051 patent appears to require too much programming to qualify as a general purpose computer function.  DMS therefore withdraws its assertion that the rule of *In re Katz* applies to "means for generating."

#### 2.  Algorithmic Structure for "means for generating"

The specification of the '051 patent does, however, set forth sufficient algorithmic

structure to enable construction of "means for generating."  Again DMS has cited a quantity of algorithmic structure, including structure described in the specification at 5:13-23, 9:25-40, and Figure 3.  DMS proposes to boil all that algorithm down to the following two-step algorithm, derived from the description of Figure 3 at 7:45-57 in the specification of the '051 as was discussed in some detail at the *Markman* hearing:

**Structure (claims 1, 10, and 22)**:
- counting the number of documents responsive to a query which fall within each category

- associating for presentation each count with a category

**Structure (claim 14)**:
- counting the number of documents responsive to a query which fall within each document type

- associating for presentation each count with a document type

There are two constructions here, because claim 1, 10, and 22 recite generating summary according to 'category' while claim 14 recites generating a summary according to 'document type.'  The pertinent portion of the specification, 7:45-57, in describing the functionality depicted in Figure 3, discloses:

> Upon completion of the searching process by the search processing complex in response to the query, the **results of the search** are presented to the user by category type (as described below in greater detail).  In the example of FIG. 3, the search result identified **24 experts, 59 patents, 150 journal articles**, etc.  The user then can select the category to view-again, in the example, the user has selected category 1 by issuing the command "VI 1", and a list of the experts identified in the search is displayed in summary format. The user can then request, by a command such as "VI CO 1", to view the complete document selected from the list, giving, in this case, complete information about the identity and credentials of the expert.

Emphasis is added to illustrate that documents responsive to a query, that is, the "results of the search" are in fact counted by category, and the resulting counts are in fact associated with

their respective categories for use in presenting search results to a user, the count of 24 associated with the category 'experts,' the count of 59 associated with the category 'patents,' and so on.  In addition, here is the pertinent portion of Figure 3, again illustrating that generating a summary is counting by category documents in search results and associating the counts with the categories for use in presentation of search results:

```
Results are Presented by Category:
1. Experts                    24
2. Patents                    59
3. Journal Articles          >150
4. Trade Articles            >150
5. Licensable Technologies    11
6. Technical Reports          25
 .
 .
```

This two-step algorithm is therefore presented both by illustration in Figure 3 and also in prose in the specification.  Moreover, the additional algorithmic structure cited by DMS in the Joint Statement and at the *Markman* hearing is sufficiently redundant to support boiling it down. The descriptions of organizing documents into categories, organizing documents for display, reverse chronological orders, and so on, from 5:13-23 are all encompassed by the two-step algorithm.  The depiction of the summaries from Figure 3 also is covered by the two-step algorithm.  And the descriptions of different kinds of summaries according to different kinds of categories at 9:25-40 are also covered by the two-step algorithm.  The algorithmic structure of the two-step algorithm, derived as it is from 7:45-57, is clearly linked to the claimed function of 'generating' by the description of processing the results of the search, the document count, and the association of the counts with categories as set forth  in 7:45-60 and illustrated explicitly in Figure 3.

The parties agree on the definition of the function of 'generating,' as set forth in the Joint Claim Construction Statement.  For that reason and for the additional reasons set forth above,

DMS submits that the correct construction of "means for generating" is:

**Function (claims 1 and 10):**  generating a summary of the number of documents responsive to the query which fall within various predetermined categories of document types.

**Function (claims 22):**  generating a summary of the number of documents responsive to the query which fall within the various categories of one of such predetermined sets of categories.

**Structure (claims 1, 10, and 22):**
- counting the number of documents responsive to a query which fall within each category

- associating for presentation each count with a category

**Function (claims 14):**  generating a summary of the number of documents responsive to the query which fall within each of the document types.

**Structure (claim 14):**
- counting the number of documents responsive to a query which fall within each document type

- associating for presentation each count with a document type

### E.  "source record"

DMS maintains its position as argued at *Markman* that the proper construction of "source record" is "a collection of data containing documents, text as well as non-text, published as a unit."  DMS proposed this construction in its Reply Claim Construction Brief of June 8, 2012, Docket No. 106, in an attempt to move toward the Defendants' then-current construction of "A collection of textual data containing documents provided to the system for loading as a unit."  DMS pointed out that the loading process could not possibly *define* a source record, because documents are loaded from source records that *pre-exist* loading.  At the *Markman* hearing, the Defendants for the first time, also in an attempt to move toward an agreeable construction, proposed:

> a collection of one or more documents, published as a unit prior to loading
> in the system, where each document contains textual data

DMS cannot agree with the limitation to 'textual data' or the limitation of "prior to loading."

DMS freely acknowledges that most of the explanatory examples in the specification describe

textual data.  DMS reasons, however, that the claims recite no limitation to "text" or "textual

data" because the inventor clearly intended to cover non-text as well:

> The large (gigabytes) domain of archived textual data searchable by the
> system of the invention consists typically of technical, business and other
> information … (though, of course, the system may be adapted for use with
> ***any type of information desired***). The information may be presented to the
> user in various formats, including but not limited to abstracts, excerpts,
> full text, or compound documents (i.e., documents
> that contain ***both text and graphics***).

8:53-57 (emphasis added).

Regarding the Defendants proposal to limit publishing to a time "prior to loading," DMS

sees no support for such a limitation in the specification or the claims.  It would seem entirely

sensible in view of the specification that a source record could be provided from a publisher for

loading into data storage at the time of publication or even before the source record is actually

published.  DMS continues to believe that the best construction for "source record" is "a

collection of data containing documents, text as well as non-text, published as a unit."

### F.      "document"

DMS maintains its position as argued at *Markman* that the proper construction of

"document" is "a document is a document, text as well as non-text."  Our reasoning is exactly

the same as set forth just above in our construction of "source record."  That is, the claims recite

no limitation to "text" because the inventor intended to cover both text and non-text.

### G.      "document type"

DMS maintains its position as argued at *Markman* that proper construction of "document

type" is "a document classification that is independent of the document subject matter, originating source record, or database in which the document was found."  This is a simple modification of the Defendants' proposed construction at the time of the Markman hearing:  "a document type is a document classification ~~where each document falls within only one classification and~~ that ~~classification~~ is independent of the document subject matter, originating source record, or database in which the document was found."  The Defendants say that document types cannot overlap and therefore each document can have only one classification, one type code.  In contemporary parlance, a document type code can be viewed as a kind of 'tag.'  In addition, DMS refers to the document types illustrated in Figure 5, which show that in fact a document can have more than one type:  A Short Article can also be typed as a News Brief, a Research Paper, a Conference Paper, or a Report.  A Feature Article in a Trade Publication can also be typed as a Research Paper, a Product Announcement, or Trade Show Information.  And so on.

### H.     "category of document types"

DMS's maintains its position argued at *Markman* that the Defendant's original proposed construction was correct:  categories of document types are "collections of one or more document types."  The Defendants now propose that categories are "collections of all documents of one or more document types."  The only issue is the word "all."  At Markman, the Defendants presented this figure:



and argued that a collection that includes some, but not other, responsive documents of the

document type(s) within a given category is not a category of document types.  That is, the

Defendants argue that the dashed line in (b) is not a category because it includes some but not all

documents of type DT1, some but not all of the documents of type DT2, and so on.  DMS simply

sees no need or basis for such a construction, which in fact is not a construction at all, but merely

a non-infringement argument.  DMS argues that the fact that some documents of type DT1 are

not so classified is irrelevant to the fact that some of them are.  That is, to the extent that a

category such as the one illustrated by the dashed line in (b) above is used to classify one or

more documents of type DT1, then it is a category, regardless whether it classifies *all* of them.

### I.       "generating an electronically executable query"

DMS maintains its position as argued at *Markman* that "generating an electronically

executable query" is properly construed as "a query, created from search criteria, capable of

electronic execution against a database management system, such as, for example, a query

expressed in the Structured Query Language or 'SQL.'  Generating an electronically executable

query is not user action as clearly indicated by Figure 3 and the supporting description in the

'051 patent at 6:35-7:57 clearly describing a client-server architecture in which user activity is

limited to the client side and query generation occurs only on the server side.  Figure 3 illustrates

a client/server architecture with user (that is, client-side) operations shown in its left column and

server-side processing in its right column, with arrows between the columns representing data

communications across a network between the client side and the server side.  Server side

activities include generation of an electronically executable query, presentation of search results,

and document display.

In the example of Figure 3, the process of generating an electronically executable query

is carried out entirely on the server side of the client server architecture.  The user's entry of

search criteria on a client device is not part of the process of generating the electronically executable query.  We distinguish the user's search criteria from the electronically executable query.  The user's search criteria is just a text string, not electronically executable, transmitted across a network from the client side to the server side.  A server receives the user's search criteria and hands them off to a query generating process, but the query generating process operates entirely on the server.

**J.      "a portion," "a substantial portion," "substantially all"**

DMS maintains its constructions argued at *Markman* for "a portion," "a substantial portion," and "substantially all" – that "a portion" means "some of the data" and "a substantial portion" means "a considerable portion of the data but not necessarily all."  Claims 10, 17, and 18 recite searching "at least a portion" of the data.  Claims 1, 14, and 22 recite searching "at least a substantial portion" of the data.  And claim 21 recites searching "substantially all of the data."  Claim differentiation presumes that "at least a substantial portion" must have different scope than "substantially all of the data."  The specification of the '051 patent also confirms at 6: 23-30 that the scope of "substantially all" is correctly differentiated from searches of less than substantially all of the data in a search domain.  Moreover, no description in the prosecution history of searching all the data represents a disclaimer of searching less than all because all such descriptions are equivocal, for example, "Applicant's system ***permits*** the user to search through all databases…", from Preliminary Amendment B of 6/27/96, page 4 – and "the entire domain of information ***can be*** searched" from Amendment A of 5/18/95, page 8 (emphasis added).  In addition, the prosecution history in the Notice of Allowability of July 17, 1996, shows that the Examiner placed no reliance on the quantity of search data.  The meaning of the prosecution history is that, for the first time, searching an entire data domain can *make sense*, not that it is

*required.*

K.    **"summary of the number of documents responsive to the query"**

DMS maintains its construction of "summary of the number of documents responsive to the query" is "a summary depicts the number of responsive documents according to document type," with no requirement regarding any particular number of document types.  Regarding the Defendants' proposed limitation that a summary must include "two or more" document types, DMS maintains its arguments from *Markman*, set forth in more detail in Plaintiff's Reply Claim Construction Brief, that "two or more" is not in the claims and that none of the Defendants "words of plurality" are so plural as to require the addition of the  Defendants' proposed hyper-plural limitation of "two or more."

L.    **"presenting" does not require an output device**

DMS maintains its construction argued at *Markman* that 'presenting,' properly construed as "preparing and causing the depiction of a number of responsive documents," does not require an output device.  On this issue the specification is clear.  The SAS can present search results to smart terminals or to dumb terminals, and the process of presenting is completed when the SAS hands off the presentation data to a network for transmission to a client-side terminal.  4:11-29. Moreover, just as it does for the query generating process and the display process, Figure 3 clearly illustrates the process of presenting search results as a server-side activity.

Respectfully submitted,

Date:     July 26, 2012        By:     /s/ *John Biggers*

John Biggers
TX Bar No.  02310100
Artoush Ohanian
TX Bar No.  24013260
Barrett Spraggins
TX Bar No.  24066132
BIGGERS & OHANIAN, LLP
P.O.  Box 1469
Austin, Texas  78767-1469
Telephone: (512) 472-9881
Facsimile: (512) 472-9887
john@biggerslaw.com
artoush@biggerslaw.com
barrett@biggerslaw.com

B.  Russell Horton
TX Bar No.  10014450
KINCAID & HORTON, L.L.P.
114 W.  7th Street, Suite 1100
Austin, Texas 78701
Telephone: (512) 499-0999
Facsimile: (512) 499-0816
rhorton@khs-law.com

ATTORNEYS FOR PLAINTIFF
DOCUMENT MANAGEMENT SYSTEMS LLC

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 26, 2012, the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  The document was served on all counsel of record who are deemed to have consented to electronic service.  Local Rule CV-5(b)(1). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5, all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this pleading by first class mail.

Date:    July 26, 2012        By:     /s/ *John Biggers*         

                         John Biggers
                         TX Bar No.  02310100
                         BIGGGERS & OHANIAN, LLP
                         P.O.  Box 1469
                         Austin, Texas 78767-1469
                         Telephone: (512) 472-9881
                         Facsimile: (512) 472-9887
                         john@biggerslaw.com