## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **DOCUMENT MANAGEMENT SYSTEMS LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | |
| **ALEXA INTERNET, INC.;** | § | |
| **DOW JONES & COMPANY, INC.;** | § | **Civil Action No. 1:11-cv-332-SS** |
| **ELSEVIER B.V.;** | § | |
| **GOOGLE INC.;** | § | **JURY TRIAL DEMANDED** |
| **IAC/INTERACTIVECORP;** | § | |
| **LEXISNEXIS;** | § | |
| **LOGIKA CORPORATION;** | § | |
| **LYCOS INC.;** | § | |
| **THOMSON REUTERS CORPORATION;** | § | |
| **WEBMD, LLC; and** | § | |
| **YAHOO! INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................... 1

II.    MEANS-PLUS-FUNCTION TERMS.......................................................... 1

    A.     Answers to the Special Master's Questions .......................................... 1

        1.     What is necessary for a structure in the specification to be
             "corresponding" structure? .................................................... 1

        2.     Can there be multiple corresponding structures to a function?................. 2

        3.     When an algorithm is required corresponding structure, must an
             algorithm take a particular form?.............................................. 3

        4.     Applying the analytical framework for means-plus-function
             limitations to the Asserted Claims, can corresponding structure be
             identified? ........................................................................ 4

    B.     "Means for Searching…"...................................................................... 4

    C.     The "Means for Storing…" Relies on the Insufficiently Disclosed
        Document Typing Process and is Therefore Indefinite ......................... 5

    D.     There is Insufficient Structure for the "Means for Categorizing…" and
        "Means for Generating a Summary…" and Claims 1, 10, 14, and 22 are
        Therefore Indefinite .......................................................................... 6

III.   NON MEANS-PLUS-FUNCTION TERMS .................................................. 8

    A.     "At Least a Portion" / "At Least a Substantial Portion" ........................ 8

        1.     The term "substantially" excuses not searching queried but
             unresponsive databases .......................................................... 9

        2.     Unequivocal disclaimers subject to only one reasonable
             interpretation require the same construction for "at least a portion"
             and "a substantial portion."................................................... 10

    B.     "Document" / "Source Record" ............................................................ 11

    C.     "Categories of Document Types" ........................................................ 12

    D.     Remaining Terms................................................................................ 14

IV.    CONCLUSION............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aristocrat Tech. v. Int'l Game,*
  521 F.3d 1328 (Fed. Cir. 2008)................................................................................3, 4

*Automotive Technologies International, Inc. v. BMW of North America, Inc.,*
  501 F.3d 1274 (Fed. Cir. 2007)...................................................................................2

*B. Braun Med., Inc. v. Abbott Labs.,*
  124 F.3d 1419 (Fed. Cir. 1997)...................................................................................1

*Creo Prods. Inc. v. Presstek, Inc.,*
  305 F.3d 1337 (Fed. Cir. 2002)...................................................................................2

*Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.,*
  412 F.3d 1291 (Fed. Cir. 2005)...................................................................................8

*Digital Biometrics, Inc. v. Identix., Inc.,*
  149 F.3d 1335 (Fed. Cir. 1998).................................................................................11

*Finisar Corp. v. DirecTV Group, Inc.,*
  523 F.3d 1323 (Fed. Cir. 2008)...................................................................................3

*Gemalto S.A. v. HTC Corp.,*
  2012 U.S. Dist. LEXIS 89764, No. 6:10-cv-561 ECF 242 (E.D. Tex. June 28, 2012)............4

*Gemalto S.A. v. HTC Corp.,*
  No. 6:10-cv-561, ECF 241 (E.D. Tex. June 28, 2012) ...........................................4

*Gillespie v. Dywidag Sys. Int'l,*
  501 F.3d 1285 (Fed. Cir. 2007).................................................................................10

*In re Katz,*
  639 F.3d 1303 (Fed. Cir. 2011).............................................................................6, 7

*Marine Polymer Techs. v. Hemcon, Inc.,*
  672 F.3d 1350 (Fed. Cir. 2012).................................................................................10

*Med. Instr. and Diagnosis v. Elekta,*
  344 F.3d 1205 (Fed. Cir. 2003)........................................................................2, 5, 6, 8

*In re Morris,*
  127 F.3d 1048 (Fed. Cir. 1997).................................................................................11

*Noah Sys. Inc. v. Intuit, Inc.*,
   675 F.3d 1302 (Fed. Cir. 2012)........................................................................1, 3, 7

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003).........................................................................1, 11

*Seachange Int'l Inc. v. C-COR, Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005)...........................................................................10

*Spring Window Fashions v. Novo Indus.*,
   323 F.3d 989 (Fed. Cir. 2003)..............................................................................10

*Taylor v. IBM Corp.*,
   6:10-cv-615, ECF 91 (E.D. Tex. July 2, 2012).......................................................4

*Typhoon Touch Technologies, Inc. v. Dell., Inc.*,
   659 F.3d 1376 (Fed. Cir. 2011)..............................................................................3

**RULES AND STATUTES**

35 U.S.C. § 112, ¶ 6 (2) ..............................................................................................1

## I.   INTRODUCTION

On June 11, 2012 the parties and the Special Master conducted a *Markman* hearing.  At the conclusion of the hearing, the Special Master requested that the parties submit supplemental briefing in an effort to respond to, among other things, questions raised by the Special Master during the course of the hearing.  Defendants submit their Supplemental Claim Construction Brief in an effort to answer these questions.  Defendants, of course, remain at the Special Master's convenience should the Special Master have additional questions.

## II.   MEANS-PLUS-FUNCTION TERMS

The parties agreed that (1) several means-plus-function limitations are governed by 35 U.S.C. § 112, ¶ 6, (2) the only physical structure that could possibly correspond to the recited functions are general-purpose computers, and (3) the specification must disclose a step-by-step algorithm on *how* to perform the recited functions.  *See* Def. Opp. CC Br. (Doc. 103) at 1, 6-7. The Special Master posed four questions related to the disputed means-plus-function limitations and algorithmic structure.

### A.   Answers to the Special Master's Questions

#### 1.   What is necessary for a structure in the specification to be "corresponding" structure?

"In exchange for being able to draft a claim limitation in purely functional language, the applicant must describe in the patent specification some structure which performs the specified function." *Noah Sys. Inc. v. Intuit, Inc.*, 675 F.3d 1302, 1318 (Fed. Cir. 2012) (internal citations omitted).  A second, separate, requirement to "the quid pro quo for the convenience of employing § 112, ¶ 6" is that the "the specification or prosecution history clearly links or associates that structure to the function recited in the claim."  *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1425 (Fed. Cir. 1997); *see also Omega Eng'g, Inc. v. Raytek Corp.*, 334

F.3d 1314, 1331-32 (Fed. Cir. 2003) (explaining an experts cannot be used to "rewrite the patent's specification" to create a clear link where the specification provides none).

In some cases, algorithmic structure may be disclosed by referencing known software, but only if the specification clearly links or associates that software to performing the recited function. *See Med. Instr. and Diagnosis v. Elekta*, 344 F.3d 1205, 1217-18 (Fed. Cir. 2003). That is, "[t]here must be something in the disclosure to indicate to the public that the patentee intends for a particular structure to correspond to a claimed function. It is not enough simply to list a certain structure in the specification; that structure must also be clearly linked to a claimed function in order to be a corresponding structure for that function." *Id.* at 1218. "If the specification is not clear as to the structure that the patentee intends to correspond to the claimed function, then the patentee . . . is attempting to claim in functional terms unbounded by any reference to structure in the specification. Such is impermissible under the statute." *Id.* at 1211.

Accordingly, to determine whether particular software is "corresponding structure" the "correct inquiry is to look at the disclosure of the patent and determine if one of skill in the art would have understood that disclosure to encompass" the software "and been able to implement such a program, not simply whether one of skill in the art would have been able to write such a software program." *Id.* at 1212.

### 2.    Can there be multiple corresponding structures to a function?

A patentee is free to disclose multiple corresponding structures, but they must be "distinct and alternative structures for performing the claimed function." *Creo Prods. Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1345 (Fed. Cir. 2002). Furthermore, each corresponding structure must be fully enabled and satisfy the written description requirement. *See Automotive Technologies International, Inc. v. BMW of North America, Inc.*, 501 F.3d 1274, 1282 (Fed. Cir. 2007) (affirming summary judgment of invalidity for lack of enablement where (1) the patent's

specification described mechanical sensors in detail and mentioned electronic sensors, (2) the means-plus-function limitation encompassed both types of sensors, and (3) the specification did not teach a person skilled in the art how to make and use the invention with an electronic sensor).

3.    **When an algorithm is required corresponding structure, must an algorithm take a particular form?**

An algorithm may be disclosed "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008).  "Even described 'in prose,' an algorithm is still 'a step-by-step procedure for accomplishing a given result'" and a specification that "merely provides functional language" fails to provide definiteness.  *Ergo Licensing*, 673 F.3d at 1365.  That is, language that "simply describes the function to be performed [is] not the algorithm by which it is performed."  *Aristocrat Tech. v. Int'l Game*, 521 F.3d 1328, 1334 (Fed. Cir. 2008).  For example, in *Typhoon Touch Technologies, Inc. v. Dell., Inc.*, 659 F.3d 1376, 1385 (Fed. Cir. 2011), the Federal Circuit found a paragraph of narrative text was sufficient because it disclosed a "step-by-step" procedure to perform the function "cross-referencing."  The cited portion of the specification, written in prose, described steps of "matching" and "if a match" performing one step and "otherwise" performing another step.  *See id.*

The Federal Circuit "imposed the algorithm requirement to prevent purely functional claiming when a patentee employs a special purpose computer-implemented means-plus-function limitation."  *Noah Systems*, 675 F.3d at 1318.  While the sufficiency of the disclosure of algorithmic structure must be judged in light of what one of ordinary skill in the art would understand the disclosure to impart, the ***specification*** must specifically disclose the algorithm, even if one of skill in the art would have been able to write an appropriate software program.

*Aristocrat Techs.*, 521 F.3d at 1337.

> 4.   **Applying the analytical framework for means-plus-function limitations to the Asserted Claims, can corresponding structure be identified?**

Pursuant to the Special Master's instructions, Defendants have again attempted to identify algorithmic structure linked or associated with each of the four means-plus-function terms.  As discussed below, for one of the disputed limitations – means for searching – a colorable argument can be made that the specification identifies and links required algorithmic structure.  For the remaining three means-plus-function terms, the specification fails to arguably identify and link required structure, including required algorithmic structure.  A similar situation arose in a recent district court decision, finding insufficient algorithmic structure for some elements and sufficient for others.  *Taylor v. IBM Corp.*, 6:10-cv-615, ECF 91, at 16-7 (E.D. Tex. July 2, 2012) (Ex. 1).[1]  These cases are instructive and may assist the Special Master in performing similar analysis on the '051 Patent.

> B.   **"Means for Searching…"**

The following passage provides an argument that the function is associated with well-known algorithms:

> The search process can utilize any index and search engine techniques including Boolean, vector, and probabilistic as long as a substantial portion of the entire domain of archived textual data is searched for each query and all documents found are returned to the organizing process.

'051 Pat. at 2:55-59.

For purposes of narrowing the issues, Defendants propose that the corresponding

---

[1] In another similar case, Magistrate Judge Love issued a claim construction order that did not address a "means for mapping" claim limitation, *Gemalto S.A. v. HTC Corp.*, 2012 U.S. Dist. LEXIS 89764, No. 6:10-cv-561, ECF 242 (E.D. Tex. June 28, 2012) (Ex. 2), but issued a Report and Recommendation on the same day recommending that the court find the "means for mapping" indefinite because the specification failed to disclose sufficient structure.  *Gemalto*

structure is a general purpose computer searching at least a substantial portion of the entire domain using one of three known algorithms – Boolean or vector or probabilistic.  This construction assumes that the searching "at least a portion" in Claim 10 is construed to have the same meaning as searching "at least a substantial portion" in other claims.  Should the Court disagree, the '051 Patent fails to link and disclose an algorithm for searching anything other than "at least a substantial portion" and thus the "means for searching at least a portion" in Claim 10 would be indefinite.

### C.   The "Means for Storing…" Relies on the Insufficiently Disclosed Document Typing Process and is Therefore Indefinite

DMS's proposed structure for the "means for storing" has changed over time, but each construction, including the most current proposal, includes a document typing process.  *See also Markman* Hr. Tr. at 78:9-15 (DMS's expert Mr. Cole stating "yes, the document typing occurs during the storing process.").  As Dr. Larson explained, the specification never explains ***how*** this document typing process is performed, noting simply that it is a "text analysis process" and "accomplished by a combination of automated and manual coding."  Larson Decl. at ¶ 28 (citing '051 Pat. at 9:14-20; 10:1-8); *see also Markman* Hr. Tr. at 112:3-113:21.  That is, "the '051 patent specification fails to identify any particular one of these countless possible ways" to perform this "text analysis process."  Larson Decl. at ¶ 28.

In contrast to the "means for searching…" in which the '051 Patent specification references known algorithms specifically in the context of searching, Dr. Larson testified that nothing in the specification would be understood to reference any known algorithm for performing document typing.  *See Markman* Hr. Tr. at 112:3-113:21; *Med. Instr.*, 344 F.3d at 1217-18.  In fact, Dr. Larson testified that even today, 16 years after the application was filed, no

---

*S.A. v. HTC Corp.*, No. 6:10-cv-561, ECF 241 (E.D. Tex. June 28, 2012) (Ex. 3).

known algorithms exist for reliably performing automatic document typing. *See Markman* Hr. Tr. at 112:3-113:21. Thus, DMS is improperly "attempting to claim in functional terms unbounded by any reference to structure in the specification." *Med. Instr.*, 344 F.3d at 1211.

DMS' recently raised *In re Katz*, 639 F.3d 1303, 1316 (Fed. Cir. 2011), and seems to have abandoned its prior agreement and expert's opinion that algorithm structure is required for this limitation. DMS is wrong, and its about-face illustrates the utter lack of corresponding structure. This is not one of the "rare circumstances where any general-purpose computer without any special programming can perform the function." *Ergo Licensing, LLC*, 673 F.3d at 1364-65. In *Katz*, the Federal Circuit remanded to the district court to construe the scope of the function "storing." *In re Katz*, 639 F.3d at 1316.[2] Here, the parties agree that the claimed function is not simply "storing;" it is "storing a large domain of data contained in multiple source records, at least some of the source records being comprised of individual documents of multiple document types." There is nothing in the specification to suggest that this function can be performed by an out-of-the-box general purpose computer. *Compare to Markman* Hr. Tr. at 113:22-114:6 (Dr. Larson testifying that a general purpose computer cannot perform the agreed functions "without an additional algorithm to tell it what to do.").

Therefore, the specification lacks sufficient structure to perform the storing function and claims 1, 10, 14, and 22 are indefinite.

**D.**     **There is Insufficient Structure for the "Means for Categorizing…" and "Means for Generating a Summary…" and Claims 1, 10, 14, and 22 are Therefore Indefinite**

As Dr. Larson explained, the only disclosure in the '051 Patent arguably linked or associated to the recited means for categorizing… and means for generating a summary… "do

---

[2] The Federal Circuit also held that "[s]everal of Katz's claims are clearly indefinite" for failure to disclose an algorithm corresponding to the claimed function. *In re Katz*, 639 F.3d at 1315.

nothing more than repeat the recited functions.  That is, they describe the function to be performed, but not how it is performed."  Larson Decl., ¶ 27 (citing '051 Pat at 5:14-15; 8:64-67, 10:17-20).  "This type of purely functional language, which simply restates the function associated with the means-plus-function limitation, is insufficient to provide the required corresponding structure."  *Noah Sys.*, 675 F.3d at 1317.

DMS has offered yet another new set of proposed algorithm structure.  While DMS's latest proposals are better focused on the actual recited functions,[3] DMS has still failed to identify anything other than functional language that explains the **what**, but not the **how** within the specification.  For example, DMS's proposed algorithm "steps" for performing the function "categorizing documents responsive to the query based on document type" include "identifying the document by document type," and "assigning the document to at least one category according to the document type."  These recitations are impermissible functional language, not a step-by-step process – there are an infinite number of ways to identify document by document type and assign documents to categories.  They "exhibit the over-breadth inherent in open-ended functional claims."  *In re Katz*, 639 F.3d at 1315. (internal citations omitted).  That DMS continues to point to purely functional language as algorithm "steps" confirms that the "specification merely provides functional language and does not contain any step-by-step process."  *Ergo Licensing*, 673 F.3d at 1365.

DMS's latest proposed algorithm steps for "generating a summary…" similarly demonstrates the lack of a step-by-step process *in the specification*.  DMS's proposed "steps"

---

[3] DMS' expert Mr. Cole testified at the *Markman* Hearing that his previous efforts to identify structure was based on what "was sufficient to the need" and when asked if that was different than "clearly linked," Mr. Cole honestly responded "So look, you're trying to make something out of clearly linked.  I don't honestly know what the requirement is."  *Markman* Hr. Tr. at 83:8-84:7.

include "counting the number of documents responsive to a query which fall within each category" and "associating for presentation each count with a category." These phrases are much closer to steps, but are not in the specification. The algorithm for performing the function must be *in the disclosure*. *See Medical Instrumentation & Diagnostics Corp. v. Elekta AB,* 344 F.3d 1205, 1214 (Fed. Cir. 2003) (holding that the correct inquiry is to "look at the *disclosure* of the patent and determine if one of skill in the art would have understood that *disclosure* to encompass software [to perform the function] and been able to implement such a program, not simply whether one of skill in the art would have been able to write such a software program.") (emphasis in original); *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005) ("Because the specification ... discloses no structure corresponding to the claimed function," the plaintiff "cannot use the declaration of its expert to rewrite the patent's specification."). It appears that DMS is, at best, stating how it believes one of ordinary skill in the art would have implemented the function rather than what is actually in the specification. That DMS can only rely upon language not actually appearing in the specification further confirms that the specification itself does not include any "step-by-step" process, and claims 1, 10, 14, and 22 are indefinite.

## III.   NON MEANS-PLUS-FUNCTION TERMS

For the non-means-plus-function terms, the Special Master instructed Defendants to revise certain constructions to avoid the use of claim language and further focus the nature of the parties' disputes for other terms. The following responds to those instructions.

### A.   "At Least a Portion" / "At Least a Substantial Portion"

| TERM/PHRASE (CLAIMS) | DEFENDANTS' PROPOSED JURY INSTRUCTION |
|---|---|
| At least a substantial portion (1, 14, 22) | The entire domain (not just a single database or a few selected databases), excluding queried but not responding databases. |
| At least a portion | The entire domain (not just a single database or a |

| TERM/PHRASE (CLAIMS) | DEFENDANTS' PROPOSED JURY INSTRUCTION |
|---|---|
| (10, 17, 18) | few selected databases), excluding queried but not responding databases. |

1. **The term "substantially" excuses not searching queried but unresponsive databases**

The Special Master instructed Defendants to adapt their prior proposed construction, "substantially the entire domain (not just a single database or a few selected databases," to "get around using substantial in the definition of substantial." *Markman* Hr. Tr. at 178:22-24. The proposed jury instruction set forth above is Defendants' revised proposed construction that is consistent with the Court's instruction and the intrinsic record.

The specification provides limited guidance on when searching less than the entire domain is still searching "substantially" the entire domain.[4] The specification describes sending a search request to ***all*** search machines in the domain and waiting for confirmation from each search column (i.e., each search engine and optional clones) "to insure that the ***entire domain will be searched***." '051 Pat. at 4:45-48. If some search engines are queried, but do not respond, the system "will inform the user that the search will not be completed across ***the entire domain*** and ask if the user wishes to continue," and will proceed with the search if the user agrees. *See id.* at 4:48-58. Based on this description, the term "substantial" accounts for situations where the system attempts to search the entire domain, but some queried databases do not respond. Defendants' proposed construction reflects this concept, and the only supportable measure of a "substantial portion."

---

[4] The specification itself repeatedly uses the term "substantial" to describe the required scope of the search. *See* '051 Patent at 2:55-58 ("the search process can utilize any index and search engine techniques … ***as long as a substantial portion of the entire domain of archived textual data is searched for each query*** …."); 10:60-64 ("In contrast [to Dialog], ***the system of the invention*** not only searches ***substantially its entire domain (not just a single database or a few selected databases)***, but also summarizes the results by category of document type.").

2.     **Unequivocal disclaimers subject to only one reasonable interpretation require the same construction for "at least a portion" and "a substantial portion."**

The other dispute related to these terms is whether "at least as portion" and "a substantial portion" have the same scope. Defendants identified five (5) separate disclaimers. *See* Def.'s CC Br. at 38-39. These disclaimers each (1) indicate that it distinguishing ("an advantage of," "a fundamental difference") the prior art from "Applicants' system" or "the system of the invention," (2) describe a shortcoming of the prior art, and (3) describe how searching through all or substantially all databases, including irrelevant databases and recently added databases, overcomes these shortcomings of the prior art. *See id.* For the convenience of the court, the five disclaimers from the prosecution history are reproduced in Exhibit 4 attached hereto.

In response, DMS argues that these disclaimers can be ignored because the Examiner did not rely on the statements in his notice of allowance. DMS's Reply CC Br. at 15. This argument has been rejected repeatedly by the Federal Circuit. *See Gillespie v. Dywidag Sys. Int'l*, 501 F.3d 1285, 1291 (Fed. Cir. 2007); *Spring Window Fashions v. Novo Indus.*, 323 F.3d 989, 995 (Fed. Cir. 2003).

DMS also relies on claim differentiation and argues that the existence of terms of different scope makes Defendants' construction an "impermissible rewrite." DMS's Reply CC Br. at 15. The Federal Circuit has stated that "claim differentiation is 'not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history.'" *Marine Polymer Techs. v. Hemcon, Inc.*, 672 F.3d 1350, 1359 (Fed. Cir. 2012) (quoting *Seachange Int'l Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005)). Here, the disclaimer statements in the specification and file history overrule any claim

differentiation.[5]

Finally, DMS confesses that it is "hanging our hat" on wiggle words such as "may" and "can" in the disclaimers "because the rules say that those disclaimers have to be unequivocal, and we think they're equivocal."  *Markman* Hr. Tr. at 209:17-23.  But "unequivocal" does not mean that a statement lacks wiggle words;[6] it means that the statement "is not suitable to multiple interpretations."  *Omega Eng'g*, 334 F.3d at 1327.  Here, each of the four prosecution history disclaimers was made in the context of identifying features that distinguish ***the rejected claims*** from the prior art.  If the applicant, in ***four separate passages***, was merely discussing "optional" functionality as DMS argues, then there would have been no reason to make the statements in the first place.

### B.  **"Document" / "Source Record"**

| TERM/PHRASE (CLAIMS) | DEFENDANTS' PROPOSED JURY INSTRUCTION |
|---|---|
| Source Record (1, 10, 14, 18, 22) | "collection of searchable textual data" |
| Document (1, 10, 14, 18, 22) | "searchable textual data"<br><br>A graphic image or video is not a document. |

At the *Markman* hearing, the Special Master expressed concern with the construction of "source record" including the word "document," especially because the word "document" was

---

[5] Similarly, in *Digital Biometrics, Inc. v. Identix., Inc.*, 149 F.3d 1335, 1347-48 (Fed. Cir. 1998), the applicant distinguished the "applicants' claimed invention" from the prior art, but the patentee argued that because some claims included a term and others did not, the disclaimer should only apply to claims that literally included that term.  The Federal Circuit rejected this argument, explaining that "[t]he public has a right to rely on such definitive statements made during prosecution."  *Id.*

[6] The inclusion of "wiggle words" by the prosecuting attorney was a transparent attempt to avoid potential disclaimers, but they do not create a reasonable alternative interpretation.  Indeed, the Federal Circuit has criticized such gamesmanship.  *See In re Morris*, 127 F.3d 1048, 1056 (Fed. Cir. 1997) (evasiveness in distinguishing claims from prior art amounts to "a veiled attempt to avoid the potential future effects of prosecution history estoppel.  Such evasiveness we cannot condone, particularly when the public must rely on the written record to define the resulting

used elsewhere in the claims.  *See Markman* Hr. Tr. at 159-169.  In addition, the Special Master asked the parties to consider a construction for "source record" that included "searchable textual data."  *Id.* at 165.  After considering the Special Master's request, Defendants now believe that term should be construed as "a collection of searchable textual data."  As recognized by the Special Master, this construction encapsulates the Defendants' position that a source record may not be a pure image or video file (i.e., a file without any text)—and does so with language taken directly from the '051 Patent specification.  *See, e.g.*, *Markman* Hr. Tr. at 165:2-6; '051 Pat. at 8:47-53; 10:1-4. DMS's proposed construction would allow a pure image or video file to qualify as a "source record," which as explained in detail in Defendants' *Markman* brief is simply not supported by any disclosure in the '051 Patent. Defs'. Opp. CC Br. at 42-45; *see also Markman* Hr. Tr. at 105 (Dr. Larson explaining that the '051 Patent does not disclose how to search, type, or categorize images or videos).

In addition, and consistent with Defendants' proposed construction for "source record," Defendants also propose that "document" be construed to mean "searchable textual data," with specific instructions to the jury that "a graphic image or video is not a document."  This construction flows directly from Defendants' construction of "source record" and the claims' requirement that documents are contained with source records. *See, e.g.*, '051 Pat., claim 17 ("documents contained in multiple source records").  The specification does not disclose how to search, type, or categorize non-textual data and, as such, Defendants' constructions properly limit the claims to "searchable textual data"—DMS' constructions do not.

### C.  "Categories of Document Types"

| TERM/PHRASE (CLAIMS) | DEFENDANTS' PROPOSED JURY INSTRUCTION |
|---|---|
| Categories of document types (1, 10, 14, 18, 22) | Collections *of all documents* of one or more document types |

property right.").

The Special Master indicated at the hearing that the dispute related to "categories of document types" was not clear. *See Markman* Hr. Tr. at 179-188.  Accordingly, Defendants have revised their construction to succinctly present the dispute – "categories of document types" is a "collection *of all documents* of one or more document types."  This construction gives meaning to the words "of document types" and is consistent with the roles of "categories" and "document types" emphasize in the specification and file history.

"A 'category' in Applicant's system may, in some circumstances, be synonymous with 'document type', but in other circumstances a 'category' may lump together several 'document types' in a single 'category.'"  6/27/96 Prelim. Amend. at 3.  It therefore follows that all documents – not just some – of the constituent document types will make-up a category of document types.

Categories become useful when different sets of categories are used to summarize search results for different types of users, such as an engineer and a company president.  *See* 5/18/95 Resp. to OA at 7.  Both the engineer and president perform the same search "yield[ing] the same answer set, but the answer set will be summarized differently for the two individuals, each being tailored to their particular needs."  '051 Pat. at 9:35-37.

The engineer uses category set #1 of Figure 5, in which product specifications, product announcements, and trade show information are each "categories" having a one-to-one correspondence with the "document types" of the same name.  5/18/95 Resp. to OA at 7.  The president, on the other hand, "might be interested in grouping together all information about products in a single 'category' called, for example, 'Product Information,'" as shown in category set #2 of Figure 5.  *See id.*  When the system presents search results to the president, "***all of the documents responsive to the search query that fall within these categories are lumped together***

in the category 'Product Information' in categories set #2." '051 Pat at 9:29-33.

Consistent with the plain meaning of the term, common sense, and the intrinsic record, Defendants' construction makes clear that a category of document types is a collection of ***all*** documents of one or more document types. That is, for example, if documents from three document types grouped together included 45 total documents, the category of those document types must include all 45 documents.

By contrast, DMS argues that if "a collection [] includes some, but not other, responsive documents of the document types within a given category, it is still a category of document types." *Markman* Hr. Tr. at 152:13-16. While stated innocuously, this construction would encompass every single collection of documents. This is because a "document type" is a property that every document will have. Therefore ***every conceivable collection of documents*** will include some documents of one or more document types, and would therefore meet DMS's test and qualify as a "category of document types." DMS's construction effectively (and improperly) re-defines "category ***of document types***" as simply "category." DMS's attempt to read this term out of the claim is especially wrong when in both office action responses in the file history the applicant cited to "categories of document types" as a "limitation that further sets Applicants invention apart from the Dialog system." *See* 5/18/95 Resp. to OA at 7; *see also* 6/27/96 Prelim. Amend. at 3 (listing "categories (of document types)" as a concept in the claims not present in Dialog).

## D.   <u>Remaining Terms</u>

Defendants are not aware of any issues raised at the hearing for the remaining terms. Defendants' proposed constructions of those terms are correct for the reasons expressed in Defendants' Claim Construction Brief and at the *Markman* hearing.

IV.     __CONCLUSION__

For the foregoing reasons, Defendants respectfully request that the Court find the § 112,

¶ 6 terms indefinite and adopt Defendants' proposed claim construction jury instructions

attached as Exhibit 5.

Respectfully submitted by:

Dated: July 26, 2012                **Attorneys for Defendants Elsevier B.V.,
                                    LexisNexis, Lycos, Inc., WebMD, LLC,
                                    and Yahoo!Inc.**

                                    /s/ *Richard S. Zembek*
                                    Dan D. Davison
                                    Fulbright & Jaworski L.L.P.
                                    2200 Ross Avenue, Suite 2800
                                    Dallas, Texas 75201-2784
                                    214-855-8000
                                    Fax: 214-855-8200
                                    ddavison@fulbright.com

                                    Joseph P. Zammit
                                    **Fulbright & Jaworski L.L.P.**
                                    666 Fifth Avenue
                                    New York, NY 10103
                                    212-318-3000
                                    Fax:212-318-3400
                                    jzammit@fulbright.com

                                    Richard S. Zembek
                                    Daniel Leventhal
                                    Daniel Prati
                                    **Fulbright & Jaworski L.L.P.**
                                    Fulbright Tower
                                    1301 McKinney, Suite 5100
                                    Houston, Texas 77010-3095
                                    713-651-5151
                                    Fax: 713-651-5246
                                    rzembek@fulbright.com
                                    dleventhal@fulbright.com
                                    dprati@fulbright.com

Dated: July 26, 2012                **Attorneys for Defendants Google Inc. and
                                    IAC/InterActiveCorp**

                                    /s/ *Alan D Albright*
                                    Alan D Albright
                                    **Bracewell & Giuliani LLP**

111 Congress Avenue, Suite 2300
Austin, Texas 78701
Tel: 512-472-7800
Fax: 512-472-9123
alan.albright@bgllp.com

Christopher Schenck
**Bracewell & Giuliani LLP**
701 Fifth Avenue, Suite 6200
Seattle, Washington 98104
Tel: 206-204-6200
Fax: 206-204-6262
chris.schenck@bgllp.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on July 26, 2012.  Any other counsel of record will be served via electronic and first class mail.

/s/ Richard Zembek

H. Barrett Spraggins                                                    Via CM/ECF
Henry Artoush Ohanian LLP
John R. Biggers
**BIGGERS AND OHANIAN LLP**
515 Congress Avenue, Suite 1400
Austin, Texas 78701
barrett@biggerslaw.com
artoush@biggerlaw.com
john@biggerslaw.com

*Counsel for Plaintiff Document Management Systems LLC*

Alan D Albright                                                          Via CM/ECF
**BRACEWELL & GIULIANI LLP**
111 Congress Avenue, Suite 2300
Austin, Texas 78701
Tel: 512-472-7800
Fax: 512-472-9123
alan.albright@bgllp.com

Christopher Schenck
**BRACEWELL & GIULIANI LLP**
701 Fifth Avenue, Suite 6200
Seattle, Washington 98104
Tel: 206-204-6200
Fax: 206-204-6262
chris.schenck@bgllp.com

*Attorneys for Defendants Google Inc. and IAC/InterActiveCorp*

Dan D. Davison                                                          Via CM/ECF
**FULBRIGHT & JAWORSKI L.L.P.**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
ddavison@fulbright.com

Joseph P. Zammit                                            Via CM/ECF
**FULBRIGHT & JAWORSKI L.L.P.**
666 Fifth Avenue
New York, New York 10103
jzammit@fulbright.com

Richard S. Zembek                                          Via CM/ECF
Daniel S. Leventhal
Daniel A. Prati
**FULBRIGHT & JAWORSKI L.L.P.**
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
rzembek@fulbright.com
dleventhal@fulbright.com
dprati@fulbright.com

***Counsel for Defendants Elsevier B.V., LexisNexis, Lycos, Inc., WebMD, LLC, and Yahoo! Inc.***