THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DOCUMENT MANAGEMENT SYSTEMS LLC, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| v. | § | |
| ALEXA INTERNET, INC.; | § | |
| DOW JONES & COMPANY, INC.; | § | Civil Action No. 1:11-cv-332-SS |
| ELSEVIER B.V.; | § | |
| GOOGLE INC.; | § | **JURY TRIAL DEMANDED** |
| IAC/INTERACTIVECORP; | § | |
| LEXISNEXIS; | § | |
| LOGIKA CORPORATION; | § | |
| LYCOS INC.; | § | |
| THOMSON REUTERS CORPORATION; | § | |
| WEBMD, LLC; and | § | |
| YAHOO! INC., | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**DEFENDANTS' REPLY SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

95685407.4

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     MEANS-PLUS-FUNCTION TERMS..................................................................... 1

     A.      Both Experts Agree that "Means for Storing" Requires Both a General
           Purpose Computer and Special Programming ......................................................... 1

     B.      The Specification Fails to Disclose Required Algorithmic Structure................... 3

           1.      DMS's Newest Algorithm for the "Means for Storing…" is not
                 Sufficiently Disclosed................................................................................. 3

           2.      DMS's Newest Algorithm for the "Means for Categorizing…" is
                 not Sufficiently Disclosed........................................................................... 5

           3.      There is Insufficient Structure for the "Means for Categorizing…"
                 and "Means for Generating a Summary…"................................................. 5

III.    NON-MEANS-PLUS-FUNCTION TERMS............................................................ 6

     A.      DMS Cannot Explain Away Five Separate Disclaimers for Searching
           Substantially the Entire Domain .......................................................................... 6

     B.      DMS's Attempt to Remove "Of Document Types" from "Categories of
           Document Types" is a Claim Construction Issue ................................................. 7

     C.      The Specification Does Not Support DMS's Arguments for the
           "Presenting…" and "Generating…" Terms.......................................................... 8

     D.      The "Summary of The Number of Documents Responsive to the Query"
           Must Identify Two or More Document Types or Categories ............................. 10

     E.      Remaining Terms................................................................................................ 10

IV.     CONCLUSION...................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aristocrat Tech. v. Int'l Game,*
    521 F.3d 1328 (Fed. Cir. 2008)....................................................................................3, 6

*B. Braun Med., Inc. v. Abbott Labs.,*
    124 F.3d 1419 (Fed. Cir. 1997)........................................................................................5

*BMC Res., Inc. v. Paymentech, L.P.,*
    498 F.3d 1373 (Fed. Cir. 2007)........................................................................................8

*Computer Docking Station Corp. v. Dell, Inc.,*
    519, F.3d 1366 (Fed. Cir. 2008)....................................................................................6, 7

*CPUMate, Inc. v. Dell Inc.,*
    No. 1:11-cv-554-SS, slip op. at 14 (W.D. Tex. July 24, 2012) ......................................7

*Ergo Licensing, Inc. v. Carefusion 303, Inc.,*
    673 F.3d 1361 (Fed. Cir. 2012)........................................................................................1

*Finisair Corp. v. DirecTV Grp., Inc.,*
    523 F.3d 1323 (Fed. Cir. 2008)........................................................................................4

*In re Katz Interactive Call Processing Patent Litigation,*
    639 F.3d 1303 (Fed. Cir. 2011)................................................................................1, 2, 3

*Noah Sys. Inc. v. Intuit, Inc.,*
    675 F.3d 1302 (Fed. Cir. 2012)........................................................................................1

*O2 Micro Int'l v. Beyond Innovation,*
    521 F.3d 1351 (Fed. Cir. 2008)........................................................................................8

*Omega Eng'g, Inc. v. Raytek Corp.,*
    334 F.3d 1314 (Fed. Cir. 2003)........................................................................................5

*Texas Instr. v. U.S. Int'l Trade Com'n,*
    988 F.2d 1165 (Fed. Cir. 1993)........................................................................................8

*Typhoon Touch Technologies, Inc. v. Dell., Inc.,*
    659 F.3d 1376 (Fed. Cir. 2011)........................................................................................4

## I.     INTRODUCTION

DMS's latest effort at identifying algorithmic structure for the means-plus-function terms is strike four.  DMS has again failed to connect the claims with anything in the specification that discloses and clearly links or associates algorithmic structure to the recited functions.  Indeed, DMS goes so far as to invite the Court to "boil down" the specification into something new and different and to identify undisclosed "steps" as an algorithm – i.e., rewrite the patent specification.  This is contrary to Federal Circuit case law, and the Court should find the means-plus-function claims invalid.

For the non means-plus-function terms, DMS invites the Court to delay resolving a claim construction dispute between the parties and rewrite method steps so as to minimize its infringement proof problems.  This invitation is also contrary to Federal Circuit precedent and should be rejected.

## II.     MEANS-PLUS-FUNCTION TERMS

### A.     Both Experts Agree that "Means for Storing" Requires Both a General Purpose Computer and Special Programming

The Federal Circuit "imposed the algorithm requirement to prevent purely functional claiming when a patentee employs a special purpose computer-implemented means-plus-function limitation."  *Noah Sys. Inc. v. Intuit, Inc.*, 675 F.3d 1302, 1318 (Fed. Cir. 2012).  In *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303 (Fed. Cir. 2011)*,* the Federal Circuit recognized a "narrow exception" to this requirement where a function can be performed by "merely plugging in a general purpose computer."  *Ergo Licensing, Inc. v. Carefusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012).  As DMS admits, only functions "that can be achieved by any general purpose computer ***without special programming*** do not

require any more structure than the general purpose computer that performs those functions."

DMS Sup. Br. 4 (citing *In re Katz*, 639 F.3d at 1316).[1]

      In an effort to avoid a determination that its patent is invalid, DMS argues that the *Katz*

exception applies to the "means for storing."  But DMS can do so only by ignoring that both its

expert (Mr. Cole) and Defendants' expert (Dr. Larson) agree that (1) the recited function cannot

be performed by a general purpose computer and (2) special programming is required.  For

example, Mr. Cole testified under cross-examination:

> Q. If I go out and buy a computer today, or in 1993, would each of those steps that you pointed to [as algorithmic steps from the '051 Patent] be on that computer in the box?
>
> A. If I understand correctly, I think the answer to that's no.
>
> Q. *So you would actually have to do some programming. You'd have to add something to what you purchased. You'd have to add something to the computer out of the box.*
>
> A. *I would think so. Yes.*
>
> *Markman* Hr. Tr. at 81:11-18.  Similarly, Defendants' expert, Dr. Larson, testified:
>
> Q. Could a general purpose computer – and by that *I mean I can go out and buy a computer. Could I perform these functions*?
>
> A. *Not without an additional algorithm to tell it what to do.*
>
> *Markman* Hr. Tr. at 114:4-6.  Thus, the "narrow exception" of *Katz* does not apply.

      DMS cites to another portion Mr. Cole's testimony as support for its position, but that

cited testimony continues to demonstrate the inapplicability of the *Katz* exception.  *See* DMS

Sup. Br. at 4-5 (citing *Markman* Hr. Tr. at 34:1-4).  For example, DMS's counsel asked Mr. Cole

whether he personally "could implement a system" that performed the claimed functions on a

general purpose computer and whether after implementation the computer would still be termed

---

[1] All emphasis added unless otherwise noted.

a "general purpose" computer. *Markman* Hr. Tr. at 33:20-34:4. Mr. Cole confirmed that "implementing" the claimed functions would require modifying the general-purpose computer: "[i]t's still the same device, ***but it would then operate according to the – whatever I had done to implement those functions*** … It now does – you know, it does whatever it did befor*e **and it does something else***."[2] *Id.* at 33:23-34:16. Moreover, the question of whether Mr. Cole "***could implement*** a system" to perform the recited functions confuses the means-plus-function definiteness requirement with enablement. *See Aristocrat Tech. v. Int'l Game*, 521 F.3d 1328, 1336 (Fed. Cir. 2008) (distinguishing the § 112, ¶ 2 definiteness requirement from enablement and explaining that the former "serves the very different purpose of limiting the scope of the claim to the particular structure disclosed").

### B.      The Specification Fails to Disclose Required Algorithmic Structure

DMS has now offered no less than its fourth attempt to identify sufficient algorithmic structure for the "means for storing," "means for categorizing," and "means for generating" limitations. As in each of its prior failed attempts, DMS is unable to identify any disclosure that clearly links or amounts to a step-by-step procedure for accomplishing a given result for the recited functions.

#### 1.      DMS's Newest Algorithm for the "Means for Storing…" is not Sufficiently Disclosed

As a fallback to its *Katz* argument, DMS attempts to describe a "boiled-down" series of "steps" for the detailed "storing…" function. *See* DMS Sup. Br. at 6-7. DMS then argues that

---

[2] To the extent DMS is now arguing that the 26-word "means for storing a large domain of data contained in multiple source records, at least some of the source records being comprised of individual documents of multiple document types" encompasses no more functionality than the much simpler, three word "means for storing" at issue in *Katz*, DMS is wrong. DMS Sup. Br. at 5. Such an argument is contrary to (i) the claim language; (ii) parties' agreed construction of the function of the "means for storing . . ." claim element; and (iii) Mr. Cole's testimony that "document typing occurs during the storing process." *Markman* Hr. Tr. at 78:9-15.

95685407.4                                          3

these "steps" are adequate because they have "the same level of detail as was in the algorithm approved by the court in *Typhoon Touch*." *See id*.  However, *Typhoon Touch* did not hold that any particular "level of detail" was universally sufficient.  *See Typhoon Touch Technologies, Inc. v. Dell., Inc.*, 659 F.3d 1376, 1385-86 (Fed. Cir. 2011).  Rather, the court analyzed the disclosed steps from the viewpoint of "a programmer of ordinary skill" and concluded that under that fact scenario it was undisputed in that case that the identified steps "are readily implemented by persons of skill in computer programming." *Id*. at 1386.

Here, the implementation of DMS's boiled down "steps" are not even arguably disclosed to the satisfaction of one of ordinary skill.  Specifically, DMS admits that "identifying and coding documents by document type" is a required step of the algorithm it urges as corresponding to the recited function.  DMS Sup. Br. at 8; *see also Markman* Hr. Tr. at 78:9-15.  As Dr. Larson explained, one of ordinary skill – even in 2012, and certainly in 1993 when DMS's patent application was filed – would not be able to readily implement a computer program for identifying and coding documents by document type.  *See Markman* Hr. Tr. at 107:7-108:15; 112:3-113:21 (testifying that implementation of a "natural language processor" for assigning document types is difficult and even the best algorithms today are only "50, 60 percent accurate"); *see also* Larson Decl. ¶ 28.[3]  Thus, the '051 Patent does not "disclose, at least to the satisfaction of one of ordinary skill in the art, enough of an algorithm to provide the necessary structure under § 112, ¶ 6" for performing the "storing…" function.  *Finisair Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008).

---

[3] Dr. Larson also explained that the specification never explains **how** this document typing process is performed, noting simply that it is a "text analysis process" and "accomplished by a combination of automated and manual coding."  Larson Decl. at ¶ 28 (citing '051 Pat. at 9:14-20; 10:1-8).

2.      **DMS's Newest Algorithm for the "Means for Categorizing…" is not Sufficiently Disclosed**

DMS admits that "identifying the document by document type" is one of three "boiled down" "steps" of the algorithm it urges as corresponding structure for the "categorizing" function.  DMS Sup. Br. at 9.  For the same reasons discussed above, the '051 Patent specification does not include sufficient algorithmic structure for "identifying the document by document type" to the satisfaction of one of ordinary skill.  *See* Section II(B)(1), above; *Markman* Hr. Tr. at 107:7-108:15; 112:3-113:21; *see also* Larson Decl. ¶ 28.

3.      **There is Insufficient Structure for the "Means for Categorizing…" and "Means for Generating a Summary…"**

DMS's newest arguments also demonstrate that the "means for categorizing" and "means for generating a summary" are indefinite.  Specifically, DMS argues that it is proper to boil down (1) the disclosure found at 4:45-60, 5:13-24, 8:58-9:12, and 10:1-30 into a three-step algorithm for the "means for categorizing" and (2) the disclosure found at 5:13-23, 9:25-40, 7:45-57, and Figure 3 into a two-step algorithm for the "means for generating a summary."  This argument fails to satisfy the requirement that the "specification or prosecution history clearly links or associates that structure to the function recited in the claim."  *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1425 (Fed. Cir. 1997).  Furthermore, this argument violates the prohibition on rewriting a patent's specification to create corresponding structure.  *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1331-32 (Fed. Cir. 2003) (explaining that experts cannot be used to "rewrite the patent's specification").

For example, DMS argues that "counting the number of documents responsive to a query which fall within each [category or document type]" is one of two "boiled down" "steps" of an algorithm corresponding to the "means for generating."  DMS Sup. Br. at 13.  This "counting" step is not disclosed anywhere in the specification, and DMS offers no explanation of its origin.

*See id.* at 13-14.  DMS includes a block quote from the specification, but the relevant portion of that quote does nothing more than repeat the function: "the results of the search are presented to the user by category type."  *See id.* (citing '051 Pat. at 7:45-57).  It is well accepted that language that "simply describes the function to be performed [is] not the algorithm by which it is performed."  *Aristocrat*, 521 F.3d at 1334.  That DMS has created steps appearing nowhere in the specification confirms that the required algorithm does not exist in it.  *See also* Larson Decl. ¶ 27 (explaining that for the "generating…" function, the specification "describe[s] the function to be performed, but not how it is performed").

III.     **NON-MEANS-PLUS-FUNCTION TERMS**

     A.     **DMS Cannot Explain Away Five Separate Disclaimers for Searching Substantially the Entire Domain**

The applicant disclaimed searching anything less than a substantial portion of the entire domain, and Defendants previously demonstrated that DMS's arguments of claim differentiation, wiggle words, and the Examiner's notice of allowance failed to suggest otherwise.  DMS Sup. Br. at 19-20; Defs. Sup. Br. at 10-11.  The Federal Circuit's decision in *Computer Docking Station Corp. v. Dell, Inc.*, 519, F.3d 1366 (Fed. Cir. 2008) ("*CDSC*") also illustrates why DMS's arguments fail.

In *CDSC*, the Federal Circuit confirmed the district court's limiting of the term "portable computer" to devices "without a built-in display or keyboard" (i.e., excluding laptops).  The Federal Circuit concluded that the statement "[r]ather than requiring a portable display and keyboard, the present invention concentrates on [other features]" demonstrated that "the applicants clearly distinguished their invention from computers with a built-in display or keyboard."  *Id.* at 1376.  Much like the "permits" language in the '051 Patent prosecution history that DMS focuses upon, the language "rather than requiring" stops short of affirmatively stating

those elements ***cannot*** be included.  Even without such definitive language, the Federal Circuit held that the statement "clearly distinguished" the claims from the prior art.  *Id.*  The same conclusion is true here.  DMS's alleged "wiggle words" do not change the context of the disclaimer statements made to distinguish the prior art, DIALOG, from the claims.

In *CDSC*, the Federal Circuit also rejected the plaintiff's reliance on other statements distinguishing the prior art on other grounds and that the examiner's notice of allowance cited to those other grounds.  The Federal Circuit concluded that "a disavowal, if clear and unambiguous, can lie in a single distinction among many" and that the examiner's response "does not erase the applicants' clear disavowal of laptops."  *Id.*  Further, the court emphasized that where there are multiple distinguishing statements, "the totality of the prosecution history informs the disavowal inquiry."  *Id.* at 1379.  Similarly here, "the sum of the patentees' statements during prosecution would lead a competitor to believe that the patentee" has disclaimed searching less than substantially the entire domain.  *See id.* at 1379 (internal citations and quotations omitted).

Finally, beyond the prosecution disclaimers, DMS fails to even address the fifth, separate, disclaimer in the specification itself.  *See* Defs. Opp. CC Br. at 36-42.[4]  This Court recently concluded that repeated specification statements, including statements similar to those in the '051 Patent discussing "the present invention" "represent a clear disavowal of claim scope."  *See CPUMate, Inc. v. Dell Inc.*, No. 1:11-cv-554-SS, slip op. at 14 (W.D. Tex. July 24, 2012).

**B.     DMS's Attempt to Remove "Of Document Types" from "Categories of Document Types" is a Claim Construction Issue**

DMS contests Defendants' construction for "categories of document types" and

---

[4] "In contrast, ***the system of the invention*** not only searches ***substantially its entire domain (not just a single database or a few selected databases)***, but also summarizes the results by category of document type."  '051 Pat. at 10:60-64.  "[T]he search process can utilize any index and search engine techniques … ***as long as a substantial portion of the entire domain of archived textual data is searched for each query*** …."  *Id.* at 2:55-58.

95685407.4

accurately summarizes the claim scope disagreement between the parties.  *See* DMS Sup. Br. at

17-18.  Rather than provide a single citation to the intrinsic record to support its position, DMS

simply argues that the disagreement between the parties is "merely a non-infringement

argument."  *See id.*; *compare to* Defs. Sup. Br. at 13-14 (citing '051 Pat. at 9:29-33, which states

that "***all*** of the documents responsive to the search query" falling within the document types

making up the category of document types are included in the category).  While DMS is correct

that the scope dispute is case-dispositive for at least one defendant, DMS incorrectly encourages

this Court to delay resolving that dispute.  "When the parties raise an actual dispute regarding the

proper scope of the claims, the court, not the jury must resolve the dispute."  *O2 Micro Int'l v.

Beyond Innovation*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

DMS would interpret "categories ***of document types***" so broadly that ***every conceivable

collection of documents*** would qualify.  Defs. Sup. Br. at 14.  Such a construction would

effectively delete the words "***of document types***" from the claims.  *Id.*  The Federal Circuit has

explained: "[T]o construe the claims in the manner suggested by [the patent holder] would read

an express limitation out of the claims.  This, we will not do because courts can neither broaden

nor narrow claims to give the patentee something different than what he has set forth."  *Texas

Instr. v. U.S. Int'l Trade Com'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) (internal citations and

quotations omitted).

### C.     The Specification Does Not Support DMS's Arguments for the "Presenting…" and "Generating…" Terms

DMS continues to urge the Court to adopt an incorrect construction that could reduce its

joint infringement problems.  *See BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378

(Fed. Cir. 2007) (explaining that the Federal Circuit "will not unilaterally restructure the claim or

the standards for joint infringement to remedy these ill-conceived claims").  As it did at the

*Markman* hearing, DMS posits that Figure 3 shows only the "client side" on the left and only the "server side" on the right.  Based on that assumption, DMS argues that the "presenting" and "generating an electronically executable search query" claim elements are limited to actions taken *only* on the server side.  DMS is wrong.

First, nothing in the '051 Patent divides or limits Figure 3 as DMS suggests.  A quick glance at Figure 3 demonstrates the fallacy of DMS' assertion:



At the bottom of the Figure's interactive process the "Complete Document is Displayed." If, as DMS suggests, that action takes place exclusively on the server side because it is on the right side of Figure 3, then the purpose of the system – to deliver responsive documents to a search user – would be undermined.  Moreover, no less than nine times the '051 Patent explains that the claimed "presenting" is "*to the user*."  *See* '051 Pat. at 2:65-67, 3:26, 6:19-21, 5:22-23, 7:45-47, 8:54, 10:31-32, 10:51-53.  Indeed, even Mr. Cole's construction, defining "presenting" as "depicting," supports Defendants' position.  Cole Decl. at 5.

Similarly, for "generating an electronically executable search query," the patent states that entirety of Figure 3—not just a portion of it—illustrates "a query formulation and search process utilized in the invention." '051 Pat. at 3:12-13. As shown above, Figure 3 includes steps of "User enters" and "User selects." Simply put, the step of "generating an electronically executable search query" cannot be accomplished without the "user entering search information," as required by Defendants' proposed construction. Likewise, the required "presenting" step cannot be accomplished without "displaying on an output device."

**D.      The "Summary of The Number of Documents Responsive to the Query" Must Identify Two or More Document Types or Categories**

DMS argues that "none of the Defendants 'words of plurality' are so plural as to require the addition of the Defendants' proposed hyperplural limitation of 'two or more.'" DMS Sup. Br. at 20. In doing so, DMS admits that each claim each contains a "word of plurality," but somehow argues that plural does not mean "two or more." This makes no sense. The claimed summary of documents must identify two or more document types or categories. Alternatively, if the Special Master prefers that the construction of the "summary" phrases use the term "multiple" (which is an actual "word of plurality" from the claims) instead of the phrase "two or more," Defendants are certainly amenable to that.

**E.      Remaining Terms**

Defendants are not aware of any issues raised at the hearing for the remaining terms. Defendants' proposed constructions of those terms are correct for the reasons expressed in Defendants' Claim Construction Brief and at the *Markman* hearing.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court find the § 112, ¶ 6 terms indefinite and adopt Defendants' proposed claim construction jury instructions.

Respectfully submitted by:

Dated: August 9, 2012

**Attorneys for Defendants Elsevier B.V., LexisNexis, Lycos, Inc., WebMD, LLC, and Yahoo!Inc.**

/s/ *Richard S. Zembek*
Dan D. Davison
**Fulbright & Jaworski L.L.P.**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
214-855-8000
Fax: 214-855-8200
ddavison@fulbright.com

Joseph P. Zammit
**Fulbright & Jaworski L.L.P.**
666 Fifth Avenue
New York, NY 10103
212-318-3000
Fax: 212-318-3400
jzammit@fulbright.com

Richard S. Zembek
Daniel Leventhal
Daniel Prati
**Fulbright & Jaworski L.L.P.**
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
713-651-5151
Fax: 713-651-5246
rzembek@fulbright.com
dleventhal@fulbright.com
dprati@fulbright.com

Dated: August 9, 2012

**Attorneys for Defendants Google Inc. and IAC/InterActiveCorp**

/s/ *Alan D Albright*
Alan D Albright
**Bracewell & Giuliani LLP**
111 Congress Avenue, Suite 2300
Austin, Texas 78701
Tel: 512-472-7800
Fax: 512-472-9123
alan.albright@bgllp.com

Christopher Schenck
**Bracewell & Giuliani LLP**

95685407.4

11

701 Fifth Avenue, Suite 6200
Seattle, Washington 98104
Tel: 206-204-6200
Fax: 206-204-6262
chris.schenck@bgllp.com

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on August 9, 2012.  Any other counsel of record will be served via electronic and first class mail.


/s/ *Richard Zembek*


H. Barrett Spraggins                                          Via CM/ECF
Henry Artoush Ohanian LLP
John R. Biggers
**BIGGERS AND OHANIAN LLP**
515 Congress Avenue, Suite 1400
Austin, Texas 78701
barrett@biggerslaw.com
artoush@biggerlaw.com
john@biggerslaw.com

***Counsel for Plaintiff Document Management Systems LLC***


Alan D Albright                                              Via CM/ECF
**BRACEWELL & GIULIANI LLP**
111 Congress Avenue, Suite 2300
Austin, Texas 78701
Tel: 512-472-7800
Fax: 512-472-9123
alan.albright@bgllp.com

Christopher Schenck
**BRACEWELL & GIULIANI LLP**
701 Fifth Avenue, Suite 6200
Seattle, Washington 98104
Tel: 206-204-6200
Fax: 206-204-6262
chris.schenck@bgllp.com

***Attorneys for Defendants Google Inc. and IAC/InterActiveCorp***


Dan D. Davison                                               Via CM/ECF
**FULBRIGHT & JAWORSKI L.L.P.**
2200 Ross Avenue, Suite 2800


95685407.4                              13

Dallas, Texas 75201-2784
ddavison@fulbright.com


Joseph P. Zammit                                                      Via CM/ECF
**FULBRIGHT & JAWORSKI L.L.P.**
666 Fifth Avenue
New York, New York 10103
jzammit@fulbright.com

Richard S. Zembek                                                    Via CM/ECF
Daniel S. Leventhal
Daniel A. Prati
**FULBRIGHT & JAWORSKI L.L.P.**
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
rzembek@fulbright.com
dleventhal@fulbright.com
dprati@fulbright.com

*Counsel for Defendants Elsevier B.V., LexisNexis, Lycos, Inc., WebMD, LLC, and Yahoo! Inc.*

95685407.4
14